ORIGINAL
FILED

2011 OCT 14 P 2: 44

CLE...
...
...COURT

E-filing     ADR

CV11- 05065     HRL

1   Mark Fox Evens (*pro hac vice*)
2   mevens@skgf.com
    Elizabeth J. Haanes (*pro hac vice*)
3   bhaanes@skgf.com
    Byron L. Pickard (*pro hac vice*)
4   bpickard@skgf.com
    Jennifer S. Bisk (*pro hac vice*)
5   jbisk@skgf.com
    Suresh B. Pillai (*pro hac vice*)
6   spillai@skgf.com
7   **STERNE, KESSLER, GOLDSTEIN & FOX, PLLC**
    1100 New York Avenue
8   Washington, D.C. 20005
    Telephone: 202.371.2600
9   Facsimile: 202.371.2540

10  Edward W. Smithers (CA State Bar No. 121268)
11  ews@smitherslf.com
    **SMITHERS LAW FIRM**
12  160 West Santa Clara Street; Suite 1025
    San Jose, CA 95113
13  Telephone:  408.271.1200
    Facsimile: 408.271.1201
14

15  *Attorneys for Plaintiffs Unisense Fertilitech A/S and*
    *Fertilitech Inc.*
16

17              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
18                **SAN JOSE DIVISION**

19  **UNISENSE FERTILITECH A/S and**
    **FERTILITECH INC.,**
20  99 Madison Avenue, 17th floor          Case No._____
    New York, New York 10016
21                          Plaintiffs,    **COMPLAINT FOR DECLARATORY**
                                           **JUDGMENT OF PATENT NON-**
22  v.                                     **INFRINGEMENT, INVALIDITY, AND**
                                           **INEQUITABLE CONDUCT**
23  **AUXOGYN, INC.,**
    1490 O'Brien Drive, Suite A            **DEMAND FOR JURY TRIAL**
24  Menlo Park, California 94025

25  and

26  **THE BOARD OF TRUSTEES OF THE**
    **LELAND STANFORD JUNIOR**
27  **UNIVERSITY**
    Office of the President
28  Building 10 Main Quad
    Stanford, California, 94305
                          Defendants.

1    Plaintiffs Unisense Fertilitech A/S and its wholly owned subsidiary Fertilitech Inc.

2   (collectively "Fertilitech") are research-based companies that develop important technology to

3   improve the success rate of in vitro fertilization ("IVF") treatments, for example, by allowing for

4   embryos to be monitored and observed continuously during critical developmental events.

5   Fertilitech advances the success of assisted reproduction by sharing its knowledge. It publishes

6   its research findings and presents these findings at industry conferences.

7    Fertilitech developed the EmbryoScope® Time-lapse System, which uses a novel

8   approach to analyze time-lapse images of a developing embryo. This novel approach allows

9   researchers to observe critical states that previously went unnoticed. Fertilitech's system is

10   important because it does not expose the embryo to adverse growth conditions or temperatures.

11   Using this system, researchers can develop new parameters for determining which embryos

12   should be selected for uterine implantation. Fertilitech has installed the EmbryoScope® in IVF

13   clinics in 22 countries. The EmbryoScope® has been used in more than 8000 IVF treatments. It

14   has been cleared for clinical use in the United States by the United States Food and Drug

15   Administration  ("FDA"). (The FDA 510(k) approval is attached to this Complaint as Exhibit 1.)

16   Fertilitech also sells the EmbryoSlide® Culture Dish products.

17    Recently, Fertilitech received several threatening letters from Auxogyn, Inc.

18   ("Auxogyn"), asserting that several of Fertilitech's publications, as well as two upcoming

19   presentations by Fertilitech at the American Society for Reproductive Medicine ("ASRM")

20   Annual Meeting on October 15-19, 2011, could infringe U.S. Patent No. 7,963,906 B2 ("the '906

21   Patent"). The '906 Patent has been assigned to the Board of Trustees of the Leland Stanford

22   Junior University ("Stanford"), which apparently licensed it to Auxogyn. The letters requested

23   that Fertilitech refrain from making its planned ASRM presentations. (The three letters from

24   Auxogyn to Fertilitech are attached to this Complaint respectively as Exhibits 2, 3, and 4.)

25    Based on Auxogyn's threatening conduct, Fertilitech brings this action against Auxogyn

26   and alleges as follows:

27

28

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, INVALIDITY, AND INEQUITABLE CONDUCT

## THE NATURE OF THE ACTION

1.    Stanford is the named assignee of the '906 Patent, issued on June 21, 2011, and entitled "Imaging and Evaluating Embryos, Oocytes, and Stem Cells."

2.    Auxogyn's website states that it is the exclusive licensee of the '906 Patent.

3.    Auxogyn sent three letters to Fertilitech stating that certain Fertilitech activities may infringe several of the '906 Patent claims and requesting that Fertilitech refrain from infringing activities. As a result of Auxogyn's threatening communications to Fertilitech, Fertilitech is under reasonable apprehension of suit by Auxogyn. Fertilitech does not infringe and has not infringed, either directly or indirectly, the '906 Patent, which is invalid and unenforceable. Fertilitech brings this action to obtain declaratory judgments of non-infringement, invalidity, and unenforceability of the '906 Patent.

## THE PARTIES

4.    Unisense Fertilitech A/S is a corporation organized under the laws of Denmark, with its principal place of business at Tueager 1, DK-8200 Aarhus N, Denmark.

5.    Fertilitech Inc., a wholly owned subsidiary of Unisense Fertilitech A/S, is incorporated in the state of New York, with its principal place of business at 99 Madison Avenue, 17th floor, New York, New York 10016.

6.    Stanford is a trust possessing corporate powers organized under the laws of California, with a principal place of business at the Office of the President, Building 10 Main Quad, Stanford, California, 94305.

7.    On information and belief, Auxogyn is a California corporation, with its principal place of business at 1490 O'Brien Drive, Suite A, Menlo Park, California 94025.

## JURISDICTION AND VENUE

8.    This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. As shown below, a justicible controversy exists between the parties that is ripe for this Court's adjudication:

1        a.      On information and belief, Auxogyn is a California corporation with its

2    principal place of business in Menlo Park, California.

3        b.      Beginning in August 2011, Auxogyn sent three letters to Fertilitech. These

4    letters warned Fertilitech that certain of Fertilitech's activities may infringe

5    Auxogyn's patent rights in the '906 Patent. These letters were all signed by

6    Auxogyn's President and CEO, Lissa Goldenstein, and listed Auxogyn's address

7    as 1490 O'Brien Drive, Suite A, Menlo Park, California.

8        c.      On or about August 19, 2011, Auxogyn sent a letter to Fertilitech "to

9    ensure that Unisense Fertilitech is aware of [the '906 Patent] and the assessment

10   methods claimed in the patent" and noting that "the United States patent laws may

11   impose legal liability upon a person or entity who induces another person or entity

12   to infringe a patent with the United States." Ex. 2.

13       d.      On or about September 27, 2011, Auxogyn sent a second letter to

14   Fertilitech stating that it had "become aware of [Fertilitech's] publication in

15   *Human Reproduction* entitled 'The Use of Morphokinetics as a Predictor of

16   Embryo Implantation.'" The letter went on "to provide further explanation

17   regarding [the '906 Patent]." Ex. 3.

18       e.      On or about October 11, 2011, Auxogyn sent a third letter to Fertilitech

19   stating, "Auxogyn is concerned about the planned presentations by [Fertilitech] at

20   the American Society for Reproductive Medicine (ASRM) Annual Meeting in

21   Orlando, Florida, U.S., on October 15-19, 2011." This third letter "request[ed]

22   that [Fertilitech] please respect Auxogyn's patent rights and refrain from

23   suggesting or encouraging the use of the '906 Patent's claimed methods within

24   the United States, such as at the upcoming ASRM Annual Meeting." Finally, the

25   letter once again warned that "under United States patent law, infringement of the

26   '906 Patent can be achieved indirectly by inducing others to perform any of the

27   '906 Patent's claimed methods in the United States. The infringing acts of

28

1    inducement (such as encouraging others to use the claimed methods) can be

2    performed either inside the United States or outside of the United States." Ex. 4.

3        10.    Based on the foregoing letters sent by Auxogyn to Fertilitech, Fertilitech

4    reasonably apprehended that Auxogyn may institute litigation related to the '906 Patent. An

5    actual case and controversy exists between the parties within the scope of this Court's

6    jurisdiction pursuant to 28 U.S.C. § 2201.

7        11.    Based on the foregoing acts that occurred in California, this Court has personal

8    jurisdiction over Auxogyn.

9        12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

10   **INTRADISTRICT ASSIGNMENT**

11       13.    Because this action is an Intellectual Property Action within the meaning of Civil

12   Local Rule 3-2(c), the action is to be assigned on a district-wide basis.

13   **GENERAL ALLEGATIONS**

14       14.    On information and belief, Stanford is the assignee of the '906 Patent.

15       15.    On information and belief, Stanford granted an exclusive license of the '906

16   Patent to Auxogyn.

17       16.    Starting in August of 2011, Auxogyn sent a series of threatening letters to

18   Fertilitech warning Fertilitech that certain of its activities may infringe Auxogyn's patent rights.

19       17.    Auxogyn's threatening actions have caused Fertilitech reasonably to apprehend

20   that Auxogyn will sue Fertilitech over the '906 Patent.

21       18.    Fertilitech does not infringe, and has not infringed, either directly, contributorily,

22   or by inducement, any valid and enforceable claim of the '906 Patent, either literally or under the

23   doctrine of equivalents.

24   **FIRST CLAIM FOR RELIEF**

25   **(Declaratory Judgment of Non-Infringement of the '906 Patent)**

26       19.    Fertilitech realleges and incorporates by reference paragraphs 1 through 18,

27   inclusive, as though fully set forth in this paragraph.

28

1    20.    Fertilitech has never ever made, used, offered to sell, sold, imported, or exported a

2 method, device, or apparatus that infringes, either directly, contributorily, or by inducement, any

3 valid and enforceable claim of the '906 Patent, either literally or under the doctrine of

4 equivalents.

5    21.    Fertilitech's EmbryoScope® product does not directly infringe any claim of the

6 '960 patent. All of the claims of the '906 Patent require that a user of a product perform the

7 mental steps of (1) measuring at least one of three listed cellular parameters and (2)

8 "determin[ing] that [a] human embryo has greater potential for developmental competence." The

9 second, "determining," step requires that the user of a product mentally make a relative

10 assessment of the quality of a given developing embryo based on whether the measured

11 parameter(s) falls into or outside one of three specified time ranges.

12    22.    Fertilitech's EmbryoScope® product provides for continuously monitoring and

13 observing embryos. But EmbryoScope® does not make any determinations about those embryos

14 as required by the claims of the '906 Patent.

15    23.    The FDA allows Fertilitech to market the EmbryoScope® product in the United

16 States for only a specific use. That specific use is, "[t]o provide an environment with controlled

17 temperature, $CO_2$ (and other gases) for the development of embryos. This model has an inverted

18 microscope and imaging system for embryo viewing. Device use is limited to five days (120 hr)

19 covering the time from post-fertilization to day 5 of development." Ex. 1.

20    24.    Fertilitech cannot, and does not, market or sell the EmbryoScope® product in the

21 United States for anything other than the one specific use allowed by the FDA. This use is

22 limited to imaging and viewing embryos and does not include any determination about the

23 embryos that are viewed.

24    25.    Fertilitech has not induced any other person to infringe the claims of the '906

25 Patent using any Fertilitech product or otherwise. Inducement of infringement requires

26 knowledge on the part of the alleged infringer that its actions will induce others to infringe.

27 Fertilitech's marketing materials describe how the EmbryoScope® operates. There is no mention

28 in any of the marketing materials of how to "determine" anything about an embryo as required

1    by the claims of the '906 Patent. (Fertilitech's EmbryoScope® brochure is attached to this

2    Complaint as Exhibit 5.)

3        26.     Fertilitech has no knowledge that its publications or presentation will cause

4    another person to directly infringe the claims of the '906 Patent.

5        27.     Fertilitech is entitled to a declaratory judgment that it does not infringe, either

6    directly, contributorily, or by inducement, any valid and enforceable claim of the '906 Patent,

7    either literally or under the doctrine of equivalents.

8                            **SECOND CLAIM FOR RELIEF**

9                **(Declaratory Judgment of Invalidity of the '906 Patent)**

10       28.     Fertilitech realleges and incorporates by reference paragraphs 1 through 27,

11   inclusive, as though fully set forth in this paragraph.

12       29.     The '906 Patent is invalid for failure to comply with the requirements of Title 35

13   of the U.S. Code, including at least one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

14               **Invalidity:  Failure to Comply With 35 U.S.C. § 101**

15       30.     Claims 1-14 of the '906 Patent are invalid under 35 U.S.C. § 101 as these claims

16   do not cover patentable subject matter. As discussed in ¶ 21 above, claims 1-14 involve mental

17   processes conducted by the person practicing the claimed method. Purely mental processes are

18   not patentable subject matter. Claims 1-14 are invalid under 35 U.S.C. § 101.

19               **Invalidity: Failure to Comply with 35 U.S.C. § 112**

20       31.     Claims 1-14 of the '906 Patent are invalid under 35 U.S.C. § 112, first paragraph.

21   The specification of the '906 Patent fails to enable the subject matter of claims 1-14 of the '906

22   Patent under 35 U.S.C. § 112, first paragraph, because the specification does not describe the

23   manner and process of making and using the full scope of the subject matter of claims 1-14.

24   Further, the specification of the '906 Patent does not provide an adequate written description of

25   the subject matter of claims 1-14 under 35 U.S.C. § 112, first paragraph, because it does not

26   describe the invention sufficiently to show that the inventors were in possession of the claimed

27   invention at the time of filing.

28

32.     The '906 Patent is not entitled to the full priority benefit claimed on the face of the patent. The '906 Patent claims priority to Provisional Application 61/236,085 ("the '085 application"). However, the '085 application does not provide an adequate written description of the subject matter of claims 1-14 under 35 U.S.C. § 112, first paragraph, because it does not describe the invention sufficiently to show that the inventors were in possession of the claimed invention at the time of filing. As a result, claims 1-14 of the '906:  (1) are not entitled to priority benefit of the '085 application filing date of August 22, 2009 and  (2) lack novelty and/or are obvious over a number of prior art references that were available prior to the May 7, 2010 filing date of the second priority document, Provisional Application 61/332,651.

**Invalidity:  Lack of Novelty Under 35 U.S.C. § 102(b)**

33.     The '906 Patent is invalid for lack of novelty under 35 U.S.C. § 102(b) in light of the disclosures within the following publications:

        a.     Yasuyuki Mio, *Morphological Analysis of Human Embryonic Development Using Time-Lapse Cinematography*, Journal of Mammalian Ova Research, Vol. 23, 2006 ("Mio (2006)");

        b.     Li Meng *et al.*, *Remote Monitoring and Evaluation of Early Human Embryo Development by a Robotic-Operated Culture-Imaging System*, Oral Presentation No. 47, Pacific Coast Reproductive Society 2009 Annual Meeting ("Meng");

        c.     Yasuyuki Mio and Kazuo Maeda, *Time-lapse Cinematography of Dynamic Changes Occurring During in vitro Development of Human Embryos*, American Journal of Obstetrics and Gynecology vol. 199, 2008 ("Mio (2008)"); and

        d.     Yumi Adachi *et al.*, *Analysis of Physiological Process in Early State of Human embryos after ICSI using Time-lapse Cinematography*; Journal of Mammalian Ova Research, Vol. 22, 2005 ("Adachi").

34.     Each of the above-listed references disclose all the limitations arranged or combined in the same way as claimed in the '906 Patent: claims 1-9 and 12 are anticipated by

1  Mio (2006); claims 1-5, 9, and 12 are anticipated by Meng; claims 1-5, 9, and 12-14 are

2  anticipated by Mio (2008); and claims 1, 3-9, and 12 are anticipated by Adachi.

3  **Invalidity: Obviousness Under 35 U.S.C. § 103(a)**

4  35.  The '906 Patent is invalid as obvious under 35 U.S.C. § 103(a). The disclosures

5  within the following combinations of references would have made the invention of the '906

6  patent obvious to a person of skill in the art at the time the '906 Patent was filed:

7  a.  Mio (2006) combined with Lemmen *et al.*, *Kinetic Markers of Human*

8  *Embryo Quality Using Time-Lapse Recordings of IVF-ICSI-Fertilized Oocytes*,

9  Reproductive BioMedicine Online vol. 17 No. 3, July 30, 2008 ("Lemmen");

10  b.  Mio (2006) combined with Mio (2008);

11  c.  Mio (2006) combined with Meng and Lemmen, and further combined

12  with  Ramsing and Berntsen, PCT Publ. No. 2007/144001 A2, "Embryo quality

13  assessment based on blastomere division and movement," published December

14  21, 2007 ("Ramsing");

15  d.  Mio (2006) combined with Trounson *et al.*, *Maturation of Human Oocytes*

16  *in Vitro and Their Developmental Competence*; Reproduction vol 121, 2001

17  ("Trounson");

18  e.  Meng combined with Ramsing, Lemmen, and Mio (2006)

19  f.  Meng combined with Mio (2006) and further combined with Cummins *et*

20  *al.*, *A Formula for Scoring Human Embryo Growth Rates in In Vitro*

21  *Fertilization:  Its Value in Predicting Pregnancy and In Comparison with Visual*

22  *Estimates of Embryo Quality*, Journal of in Vitro Fertilization and Embryo

23  Transfer vol. 3 no. 5,  1986 ("Cummins");

24  g.  Meng combined with Trounson;

25  h.  Meng combined with Lemmen and Mio (2008);

26  i.  Mio (2008) combined with Mio (2006) and Cummins;

27  j.  Mio (2008) combined with Trounson;

28  k.  Adachi combined with Lemmen;

1           l.     Adachi combined with Mio (2008)

2           m.    Adachi combined with Trounson;

3           n.     Lemmen combined with Ramsing and Meng;

4           o.     Lemmen combined with Ramsing and Meng, and further combined with

5    Trounson;

6           p.     Lemmen combined with Ramsing and Meng and further in view of

7    Trounson.

8      36.     There is an actual controversy, within the meaning of 28 U.S.C. §§2201 and 2202,

9    between Fertilitech and Auxogyn concerning the invalidity of the '906 Patent.

10      37.     Fertilitech is entitled to a declaratory judgment that the claims of the '906 Patent

11    are invalid.

12                    **THIRD CLAIM FOR RELIEF**

13    **(Declaratory Judgment of Inequitable Conduct / Unenforceability of the '906 Patent)**

14      38.     Fertilitech realleges and incorporates by reference paragraphs 1 through 37,

15    inclusive, as though fully set forth in this paragraph.

16      39.     The '906 Patent is unenforceable because it was obtained from the United States

17    Patent and Trademark Office ("USPTO") under the special accelerated examination program.

18    The special program requires that the applicant conduct a preexamination search, file a search

19    report document, and file a statement based on a good faith belief that the preexamination search

20    was conducted in compliance with the requirements of MPEP § 708.02(a).

21      40.     Because of the higher duty of candor that accompanies an accelerated

22    examination program at the USPTO, the inventors of the '906 Patent and their prosecuting patent

23    attorneys had an affirmative duty to provide the USPTO will all information they reasonably

24    could find under the required preexamination search required by MPEP § 708.02(a).

25      41.     On information and belief, if the inventors and their prosecuting patent attorneys

26    had conducted a proper preexamination search, they had to have found at least the following

27    material prior art: Mio (2006); Meng; Mio (2008); Adachi; Lemmen; and Trounson. Under the

28    applicable USPTO rules, they would have been required to disclose this art. They did not

1  disclose this art. As explained above in paragraphs 33-35, this art is material because it is

2  relevant to the novelty and hence patentability of the '906 Patent claims.

3        42.    On information and belief, the inventors and their prosecuting patent attorneys did

4  not provide the required material prior art that they should have found if they had performed a

5  proper preexamination search.

6        43.    On information and belief, the failure of the inventors and the prosecuting patent

7  attorneys to provide the PTO with the results of a proper preexamination search was an

8  intentional act or omission and done with deceptive intent.

9        44.    On information and belief, providing the USPTO with a statement that a good

10  faith preexamination search was done was an intentional misrepresentation, done with deceptive

11  intent.

12       45.    As an example that the inventors and the prosecuting attorneys acted with

13  deceptive intent, one prior art reference, "Lemmen," (identified above in ¶¶ 33-35 and ¶ 40) was

14  not submitted to the USPTO during prosecution either in an IDS or analyzed in the submitted

15  search document as required by the USPTO's accelerated examination program. Thus, Lemmen

16  was not considered by the Examiner during prosecution of the '906 Patent. However, although

17  Lemmon is mentioned in the "Background of the Invention" section of the '906 Patent, the

18  inventors and prosecuting attorney inaccurately discounted its relevance:

19        More recently, time-lapse imaging has been used to observe human embryo
          development during the first 24 hours following fertilization (Lemmen et al.
20        (2008) Reproductive BioMedicine Online 17(3):385-391). The synchrony of
          nuclei after the first division was found to correlate with pregnancy outcomes.
21        However, this work concluded that early first cleavage was not an important
          predictive parameter, which contradicts previous studies (Fenwick, et al. (2002)
22        Human Reproduction 17:407-412; Lundin, et al. (2001) Human Reproduction
          16:2652-2657). (emphasis added). '906 Patent, 2:60-3:2.
23

24       46.    Lemmen was material and should have been presented to the Examiner during

25  prosecution of the application that became the '906 Patent. Had the inventors and their

26  prosecuting attorney presented Lemmen accurately to the Examiner, the Examiner should never

27  have issued the '906 Patent.

28       47.    On information and belief, the foregoing misrepresentation was an intentional act

or omission, done with deceptive intent.

48.     In addition, MPEP 713.04 requires that "[a] complete written statement as to the substance of any … interview with regard to the merits of an application must be made of record in the application."

49.     On information and belief, the file history of the '906 Patent does not contain the required summary even though an interview with the examiner occurred. In fact, the interview led to significant amendments to the claims that directly led to allowance of the amended claims.

50.     On information and belief, the failure of the inventors and their prosecuting patent attorneys to provide a summary of the examiner interview was an intentional act or omission, done with deceptive intent.

51.     Fertilitech is entitled to a declaratory judgment that the claims of the '906 Patent are unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Fertilitech asks this Court to enter judgment against Auxogyn as follows:

A.     For a declaration that Fertilitech does not infringe, either directly, contributorily, or by inducement, any valid and enforceable claim of the '906 Patent, either literally or under the doctrine of equivalents;

B.     For a declaration that the '906 Patent is invalid;

C.     For a declaration that the '906 Patent is unenforceable;

D.     For such other relief as this Court deems just and proper.

DATED:  October 14, 2011                       Respectfully submitted,

                                               By: _____
                                               EDWARD W. SMITHERS
                                               **SMITHERS LAW FIRM**

                                               Mark Fox Evens (*pro hac vice*)
                                               Elizabeth J. Haanes (*pro hac vice*)
                                               Byron L. Pickard (*pro hac vice*)
                                               Jennifer S. Bisk (*pro hac vice*)
                                               Suresh B. Pillai (*pro hac vice*)
                                               **STERNE, KESSLER, GOLDSTEIN & FOX, PLLC**
                                               *Attorneys for Plaintiffs Unisense Fertilitech A/S and Fertilitech Inc.*

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, INVALIDITY, AND INEQUITABLE CONDUCT

1

## DEMAND FOR JURY TRIAL

2   In accordance with Federal Rule of Civil Procedure 38(b), Plaintiffs Unisense Fertilitech

3   A/S and Fertilitech Inc. hereby demands a jury trial on all issues triable of right by a jury.

4

5   DATED: October 14, 2011                    Respectfully submitted,

6   By: _____

7   EDWARD W. SMITHERS
    **SMITHERS LAW FIRM**

8   Mark Fox Evens (*pro hac vice*)
    Elizabeth J. Haanes (*pro hac vice*)
9   Byron L. Pickard (*pro hac vice*)
    Jennifer S. Bisk (*pro hac vice*)
10  Suresh B. Pillai (*pro hac vice*)
11  **STERNE, KESSLER, GOLDSTEIN**
    **& FOX, PLLC**
12
13  *Attorneys for Plaintiffs Unisense Fertilitech A/S*
    *and Fertilitech Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28