**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNISENSE FERTILITECH A/S** *et al.*, | Case No.:  **11-CV-5065 YGR** |
| **Plaintiffs,** | **ORDER GRANTING MOTION OF DEFENDANTS TO DISMISS THE COMPLAINT** |
| vs. | |
| **AUXOGYN, INC.** *et al.*, | |
| **Defendants.** | |

Plaintiffs Unisense Fertilitech A/S and Fertilitech, Inc. ("Fertilitech") seek declaratory judgments against Defendants Auxogyn, Inc. ("Auxogyn") and the Board of Trustees of Leland Stanford Junior University (collectively "Patentee Defendants") to have Patent Number 7,963,906 B2 (the " '906 Patent") declared invalid, not infringed, and unenforceable.

The Patentee Defendants have filed a Motion to Dismiss for lack of subject matter jurisdiction on the grounds that the Complaint fails to establish a case or controversy under Article III of the Constitution.[1]  (Dkt. No. 21.)  The Court held oral argument on May 8, 2012, and requested supplemental briefing on the issue of the third party conduct for which Fertilitech could be held liable for inducing infringement.  Briefing was completed on June 8, 2012.  (*See* Dkt. No. 47, 48.)

Having carefully considered the papers submitted and the pleadings in this action, for the reasons set forth below, the Court hereby **GRANTS** the Motion to Dismiss **WITH LEAVE TO AMEND**, to the extent possible in light of this Order.

---

[1] In the alternative, the Patentee Defendants move to dismiss Count III of the Complaint, which alleges fraud against the Patent and Trademark Office, for failure to plead fraud with particularity.  Plaintiffs indicate that they do not oppose dismissal of Count III and represent that they will submit an appropriate Rule 41 dismissal without prejudice as to Count III.  In reliance upon this representation, the Court will not address that part of Defendants' motion that seeks to dismiss Count III for failure to state a claim.

United States District Court
Northern District of California

I.      **INTRODUCTION**

As alleged in this case, researchers at Stanford University, including the co-founders of Auxogyn, developed technology to assist in determining when a human embryo has greater potential for developmental competence.  In essence, the technology seeks to improve the success rate of *in vitro* fertilization treatments by facilitating the assessment of embryonic characteristics that allow the prediction of the developmental potential of an embryo and the probability of achieving pregnancy for infertile couples.  (Complaint at 2:21-22; Defs.' Mot. Dismiss 1, 5.)  From this work, the Patent and Trademark Office issued the '906 Patent.  Thereafter, the '906 Patent was assigned to the Board of Trustees of Leland Stanford Junior University, and then exclusively licensed to Auxogyn. (Complaint ¶¶ 14, 15.)

Plaintiff Fertilitech manufactures and sells incubators that take time-lapse images of developing embryos.  One product Fertilitech developed is the EmbryoScope®, which allows researchers to observe critical states of embryonic development that previously went unnoticed.  In addition to selling its products, Fertilitech shares its scientific knowledge with the public by publishing its research findings in scientific papers, and presenting its findings at industry conferences.  (Complaint at 2; Defs.' Mot. Dismiss 5.)

A.      **AUXOGYN'S LETTERS.**

Beginning in August 2011, Auxogyn sent three letters to Fertilitech, advising Fertilitech that certain Fertilitech publications and presentations may discuss information within the scope of the '906 Patent.  The first letter, sent on or about August 19, 2011, stated that Auxogyn learned that Fertilitech had been discussing and presenting information related to the scope of the '906 Patent. (Complaint, Ex. 2, Dkt. No. 1-2.)  Auxogyn sent the letter "to ensure that Unisense Fertilitech is aware of [the '906 Patent] and the assessment methods claimed in the patent" and noted that "the United States patent laws may impose legal liability upon a person or entity who induces another person or entity to infringe a patent with the United States."  (*Id.*)

Auxogyn sent a second letter to Fertilitech on or about September 27, 2011, stating that Auxogyn had "become aware of [Fertilitech's] publication in Human Reproduction entitled 'The Use of Morphokinetics as a Predictor of Embryo Implantation.'"  (Complaint, Ex. 3, Dkt. No. 1-3.)  The

United States District Court
Northern District of California

2

second letter went on "to provide further explanation regarding [the '906 Patent]." (*Id.*)  This second letter did not reference the patent laws.

On or about October 11, 2011, Auxogyn sent a third letter to Fertilitech stating, "Auxogyn is concerned about the planned presentations by [Fertilitech] at the American Society for Reproductive Medicine (ASRM) Annual Meeting in Orlando, Florida, U.S., on October 15-19, 2011.  (Complaint, Ex. 4, Dkt. No. 1-4.)  The letter "request[ed] that [Fertilitech] please respect Auxogyn's patent rights and refrain from suggesting or encouraging the use of the '906 Patent's claimed methods within the United States, such as at the upcoming ASRM Annual Meeting." (*Id.*)  Additionally, the letter advised that "under United States patent law, infringement of the '906 Patent can be achieved indirectly by inducing others to perform any of the '906 Patent's claimed methods in the United States. (*Id.*)  The infringing acts of inducement (such as encouraging others to use the claimed methods) can be performed either inside the United States or outside of the United States." (*Id.*)

## B.    FERTILITECH FILES SUIT.

On October 14, 2011, Fertilitech initiated this declaratory judgment action, alleging that after receiving these three letters from Auxogyn, it "reasonably apprehended that Auxogyn may institute litigation related to the '906 Patent."  Fertilitech asserts that its EmbryoScope® product does not directly infringe the '906 Patent and its EmbryoScope® product does not cause others to infringe the '906 Patent.  Further, Fertilitech has no knowledge that its publications or presentations indirectly cause others to infringe on the '906 Patent.  By way of this declaratory relief action, Fertilitech seeks judgments of non-infringement, invalidity, and unenforceability of the '906 Patent.

## II.    LEGAL STANDARDS

### A.    SUBJECT MATTER JURISDICTION.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the Court.  *See, e.g., Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003).  A challenge to subject matter jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint."  *Id.* at 1039-40 n.2; *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Auxogyn challenges the Court's jurisdiction on the grounds that on its face, the facts alleged in the

United States District Court
Northern District of California

3

1    Complaint do not establish an actual case or controversy between the parties to warrant the issuance

2    of a declaratory judgment.  In a facial attack, the defendant challenges the sufficiency of the

3    allegations of subject matter jurisdiction in the complaint.  *Love v. United States*, 915 F.2d 1242,

4    1245 (9th Cir. 1990).  Review is akin to that for a Rule 12(b)(6) motion, *i.e.*, all allegations of the

5    complaint are taken as true and all reasonable inferences are drawn in favor of the plaintiff.  *Id*.

6        **B.    DECLARATORY JUDGMENT ACT.**

7        The Declaratory Judgment Act provides that:  "In a case of actual controversy within its

8    jurisdiction . . . any court in the United States . . . may declare the rights and other legal relations of

9    any interested party seeking such declaration, whether or not further relief is or could be sought."  28

10   U.S.C. § 2201(a).  The phrase "a case of actual controversy" refers to the types of "cases" and

11   "controversies" that are justiciable under Article III of the Constitution.  *3M Co. v. Avery Dennison*

12   *Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012).[2]  To present a "case or controversy," the dispute must

13   be "real and substantial" and "definite and concrete, touching the legal relations of parties having

14   adverse legal interests[.]"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see*

15   *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) ("must be based on a

16   real and immediate injury or threat of future injury that is caused by the defendants—an objective

17   standard that cannot be met by a purely subjective or speculative fear of future harm.").

18        The test for determining subject matter jurisdiction in declaratory judgment actions is

19   "whether the facts alleged, under all the circumstances, show that there is a substantial controversy,

20   between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

21   issuance of a declaratory judgment."  *MedImmune*, *supra*, 549 U.S. at 127.[3]  Thus, declaratory

22   [2] "'Whether an actual case or controversy exists so that a district court may entertain an action for a

23   declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law.'"  *3M Co.*,
     *supra*, 673 F.3d at 1377 (quoting *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005),

24   *overruled on other grounds*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130-31 (2007).

25   [3] Prior to *MedImmune*, the Federal Circuit had developed a two-part "reasonable apprehension of suit" test to
     determine if an "actual controversy" existed in a declaratory action for non-infringement or invalidity.  The test

26   required both: (1) acts of defendant indicating an intent to enforce its patent, which create a reasonable
     apprehension of an infringement suit; and (2) present activity by the plaintiff or concrete steps taken to

27   conduct such an activity that might subject plaintiff or its customers to suit for patent infringement.
     *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737 (Fed. Cir. 1988).  *MedImmune* rejected

28   the "reasonable apprehension of suit" test finding that it was too stringent and held that under the declaratory
     judgment act, a court should look at "all the circumstances" to determine whether a justiciable Article III

United States District Court
Northern District of California

1    judgment jurisdiction exists "where a patentee asserts rights under a patent based on certain

2    identified ongoing or planned activity of another party, and where that party contends that it has the

3    right to engage in the accused activity without license." *SanDisk Corp. v. STMicroelectronics, Inc.*,

4    480 F.3d 1372, 1381 (Fed. Cir. 2007).  The party invoking the Court's jurisdiction must point to

5    "some affirmative act by the patentee" defendant[4] that forms the basis for an actual controversy

6    between the parties.  *Prasco*, *supra*, 537 F.3d at 1338-39.  The Court also should consider present

7    activity or concrete steps taken to conduct potentially infringing activity that might subject the

8    plaintiff to suit.  *See CatTech*, *supra*, 528 F.3d at 880.

9    **III.     DISCUSSION**

10          Fertilitech alleges that it "has not induced any other person to infringe the claims of the '906

11   Patent."  (Complaint ¶ 25.)  Furthermore, "Fertilitech has no knowledge that its publications or

12   presentation will cause another person to directly infringe the claims of the '906 Patent."  (*Id.* ¶ 26.)

13   However, Fertilitech has instituted this lawsuit because, "[a]s a result of Augogyn's threatening

14   communications to Fertilitech, Fertilitech [was] under reasonable apprehension of suit by Auxogyn."

15   (*Id.* ¶ 3; *see also, id.* ¶ 10 ("Fertilitech reasonably apprehended that Auxogyn may institute litigation

16   related to the '906 Patent."), and ¶ 16 ("Auxogyn's threatening actions have caused Fertilitech

17   reasonably to apprehend that Auxogyn will sue Fertilitech over the '906 Patent").)  It seeks a

18   declaration that "it does not infringe, either directly, contributorily, or by inducement, any valid and

19   enforceable claim of the '906 Patent."  (*Id.* ¶ 27.)

---

22   controversy exists.  *Teva Pharms. USA, Inc. v. Novartis Pharms Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007).
     Subsequently, the Federal Circuit has clarified that both the issue of whether acts of the defendant create a
23   reasonable apprehension of a patent infringement lawsuit and the issue of whether the plaintiff has made
     meaningful preparation to conduct potentially infringing activity remain important elements in the totality of
24   the circumstances which must be considered in determining whether a declaratory judgment is appropriate.
     *See CatTech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008) (noting that absent concrete steps to
25   conduct infringing activity, the dispute is not "immediate" or "real").

26   [4] Where, as here, the affirmative acts by the patentee are communications to the plaintiff, there are no "magic
     words such as 'litigation' or 'infringement'" that must be recited before the recipient may file suit seeking a
27   declaratory judgment.  *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).
     Indeed, the Federal Circuit commented that it would be hard to believe a "competent lawyer drafting such
28   correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege
     infringement."  *Id.*

**A.    ACTS OF DEFENDANT INDICATING AN INTENT TO ENFORCE ITS PATENT.**

Each letter that Auxogyn wrote to Fertilitech expressed a concern that Fertilitech's presentations and/or publications discussed information within the scope of the '906 Patent.  The first letter states that Auxogyn "learned" that Fertilitech had been involved in discussing and presenting procedures that might come within the scope of the '906 Patent and advised that the patent laws may impose liability for inducing another to infringe a patent.  (Complaint, Ex. 2.)  The second letter states that Auxogyn had "become aware of [Fertilitech's] publication in *Human Reproduction* entitled 'The Use of Morphokinetics as a Predictor of Embryo Implantation,' which discusses the measurement and use of certain timing parameters."  (Complaint, Ex. 3)  The second letter went on "to provide further explanation regarding [the '906 Patent]."  (*Id.*)

On October 11, 2011, Auxogyn sent a third and final letter to Fertilitech that expressed Auxogyn's "concern[ ] about the planned presentations by [Fertilitech] at the American Society for Reproductive Medicine (ASRM) Annual Meeting in Orlando, Florida, U.S., on October 15-19, 2011. (Complaint, Ex. 4.)  The letter was sent "to request that [Fertilitech] respect Auxogyn's patent rights and refrain from suggesting or encouraging the use of the '906 patent's claimed methods . . . at the upcoming ASRM Annual Meeting."  The letter advised Fertilitech that "the '906 patent covers methods for assessing the potential for developmental competence of a human," compares the scope of the claims of '906 Patent to Fertiltech's presentation and advises that the material to be presented is "within the scope of the '906 patent claims."  (*Id.*)  The final paragraph in the letter, captioned in bold print "**Inducement of Infringement**," advises Fertilitech that the patent laws impose liability for inducing others to infringe the '906 Patent and provides an example of inducement, "encouraging others to use the claimed methods." (*Id.*)

Having identified the acts of Auxogyn that articulate rights under the '906 Patent, the next step is to analyze the planned or ongoing activity identified in Auxogyn's letters and in Fertilitech's Complaint to determine whether such conduct might subject Fertilitech to a patent infringement lawsuit.

**B.    PRESENT ACTIVITY OR CONCRETE STEPS TAKEN TO CONDUCT ACTIVITY THAT MIGHT SUBJECT PLAINTIFF TO SUIT FOR PATENT INFRINGEMENT.**

*MedImmune* requires that the Court consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  549 U.S. at 126-27.  For the parties to have "adverse legal interests," "there [must] be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." *Arrowhead*, *supra*, 846 F.2d at 943; *see Arris Group Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374-75 (Fed. Cir. 2011) ("An 'adverse legal interest' requires a dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring."); *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) ("A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." ).  Put another way, "[i]t is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative" of whether there is a constitutional "case or controversy." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 244 (1937).

The threatened legal action here is induced infringement of a method patent claim.  There are two requirements for induced infringement:  "first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quotations omitted); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) (direct infringement and that "the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.") (quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)); 35 U.S.C. § 271(b) (anyone who "actively induces infringement of a patent shall be liable as an infringer.").  Thus, "a finding of inducement requires a threshold finding of direct infringement–either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341

United States District Court
Northern District of California

1   (Fed. Cir. 2008), *cert. denied*, 129 S.Ct. 2864 (2009) (citing *ACCO Brands*, *supra*, 501 F.3d at 1313).

2   Additionally, to infringe on a method patent, a person must perform all of the steps of the method.

3   *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) (citing *Joy*

4   *Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)).[5]

5        Situations where a declaratory plaintiff has satisfied the "case or controversy" requirement

6   based upon a putative third-party infringer's activity include when:  (1) the declaratory plaintiff was

7   obligated to indemnify the third-party from infringement liability; and (2) the patentee complained

8   that users of the declaratory plaintiff's product directly infringe on the patent through the use of the

9   declaratory plaintiff's product.  *See Arris*, *supra*, 639 F.3d at 1374 ("where a patent holder accuses

10  customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has

11  standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its

12  customers from infringement liability, or (b) there is a controversy between the patentee and the

13  supplier as to the supplier's liability for induced or contributory infringement based on the alleged

14  acts of direct infringement by its customers.").[6]  In both scenarios, there was ongoing or planned

15  activity of a third-party that potentially infringed on the declaratory defendant's patent and the

16  declaratory plaintiff's relationship with that third-party was such (*i.e.*, buyer-seller or indemnitor-

17  _____

18  [5] Under 35 U.S.C. § 271(c), a supplier can be liable for contributory infringement if its products necessarily infringe on the patent.  There is no suggestion that any of Fertilitech's products necessarily infringe upon the

19  '906 Patent, so only inducement of infringement is at issue.  Induced infringement based upon a third party's use of an accused product, requires "active steps taken to encourage direct infringement, such as advertising

20  an infringing use or instructing how to engage in an infringing use."  *MEMC Elec. Materials*, *supra*, 420 F.3d at 1379 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

21  [6] *Accord ABB Inc. v. Cooper Industries, LLC*, 635 F.3d 1345 (Fed. Cir. 2011) (finding declaratory judgment

22  jurisdiction over action seeking declaration that ABB could outsource manufacturing under its license agreement with Cooper where Cooper had contacted Dow Chemicals, the third-party manufacturer to whom

23  ABB had outsourced its work, "to formally put Dow on notice that Cooper will vigorously defend its rights should Dow attempt to make products covered by one or more of Cooper's products"); *BP Chemicals Ltd. v.*

24  *Union Carbide Corp.*, 4 F.3d 975, 981 (Fed. Cir. 1993) ("The agreement to defend or indemnify a third person does not provide the actual controversy whereby the defender or indemnitor may bring a declaratory action on

25  its own behalf when there is no actual controversy involving the indemnitee.").  *See also SanDisk*, *supra*, 480 F.3d at 1381 ("where a patentee asserts rights under a patent based on certain identified ongoing or planned

26  activity of another party, and where that party contends that it has the right to engage in the accused activity without a license"); *CatTech*, *supra*, 528 F.3d at 880 (whether a party has made meaningful preparation to

27  conduct potentially infringing activity remains an important element in the totality of the circumstances which must be considered in determining whether a declaratory judgment is appropriate; absent concrete steps to

28  conduct infringing activity, the dispute is not "immediate" or "real").

indemnitee) that the legal rights of the declaratory plaintiff were affected by the third-party's potentially infringing acts.  Here, no specific instances of potentially infringing activity or concrete steps towards potentially infringing activity have been identified and no product has been accused of necessarily infringing on the '906 Patent.

> 1.  *Whether there is a justiciable controversy regarding whether the EmbryoScope® directly or indirectly infringes on the '906 Patent?*

Although Auxogyn has not accused any of Fertilitech's products of infringement, Fertilitech seeks a declaratory judgment of non-infringement with respect to its EmbryoScope®. None of the letters references the EmbryoScope® and none suggests that the EmbryoScope®–or any other product developed or marketed by Fertilitech–infringes the '906 Patent.  Rather, the conduct identified by the three letters relates to Fertilitech's presentations and publications.  Thus, to the extent that Fertilitech is in apprehension of a lawsuit based upon the sale or use of the EmbryoScope®, the Court does not have jurisdiction under the declaratory judgment act.

Accordingly, the Court concludes that there is no justiciable controversy concerning whether the EmbryoScope® directly or indirectly infringes on the '906 Patent.

> 2.  *Whether there is a justiciable controversy regarding whether readers or attendees will infringe on the '906 Patent?*

Fertilitech also argues that it has identified "concrete steps:  it is selling its FDA-approved [Embryoscope®] system and has published abstracts and a paper describing methods of using the system in such a way that Auxogyn alleges would directly infringe and induce infringement."  (Fertilitech's Supp'l Br. 4.)  The nature of the threatened legal action identified in the letters relates to whether Fertilitech's presentations and publications could induce third parties to infringe on the '906 Patent.  While Fertilitech has published articles and made presentations, no potentially infringing conduct (or concrete steps towards infringing conduct) is identified in the letters or the Complaint.

Jurisdiction over a declaratory judgment action requires "the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished

1   from an opinion advising what the law would be upon a hypothetical state of facts.'" *Medimmune*,

2   *supra*, 549 U.S. at 121 (quoting *Aetna*, *supra*, 300 U.S. at 240-41).  There has been no charge of

3   infringement made by Auxogyn against Fertilitech, no charge of infringement made by Auxogyn

4   against any reader of Fertilitech's publications, and no charge of infringement made by Auxogyn

5   against a viewer of Fertilitech's presentations.  Where no one is engaging in potentially infringing

6   conduct, there is no controversy to support declaratory judgment jurisdiction to test the validity of a

7   patent.

8           The Court is concerned that Fertilitech is asking the Court to issue an advisory opinion based

9   upon an unstated, hypothetical set of facts.  While Fertilitech may have an interest in determining

10  whether readers of its publications or viewers of its presentations may infringe on the '906 Patent,

11  and whether it could be liable for such infringement, it is unclear how Fertilitech's publications or

12  presentations could induce infringement.  Accordingly, the dispute is neither "immediate" nor "real"

13  so as to meet the requirements for jurisdiction under the Declaratory Judgment Act.

14  **IV.     CONCLUSION**

15          Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss for lack of subject

16  matter jurisdiction.

17          Out of an abundance, the Court grants leave to amend to the extent possible consistent with

18  this Order and with Rule 11 obligations.  Such amended complaint shall be filed no later than

19  October 5, 2012.

20          This Order Terminates Docket Number 21.

21          **IT IS SO ORDERED.**
22  **Date: September 14, 2012**
                                        _____
23                                       **YVONNE GONZALEZ ROGERS**
                                         **UNITED STATES DISTRICT COURT JUDGE**

24

25

26

27

28